UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------x

JEFFEREY ROBERIO,

Petitioner, Civil Action No. 03-12624-DPW

vs.

TIMOTHY HALL,

Respondent.

---------------------------------------------x

**RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254**

The respondent, Timothy Hall, hereby submits the following memorandum of law in opposition to the petition for a writ of habeas corpus filed by the petitioner, Jefferey Roberio (hereinafter, "the petitioner"). As is set forth in greater detail below, the petition should be denied because the petitioner cannot demonstrate that the state court's adjudication of his claims resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

## PRIOR PROCEEDINGS

On August 25, 1986, a Plymouth County grand jury returned an indictment against the petitioner on a single count of first degree murder. *See* Supplemental Answer, previously filed (hereinafter, "Supp. Ans."), Exhibit 1. On May 26, 1987, a second Plymouth County grand jury returned an additional indictment on a single count of armed robbery. *Id.*

The petitioner's first trial commenced on August 11, 1987. *See* Supp. Ans., Exhibit 1. At the conclusion of that trial, the jury returned verdicts of guilty on both indictments. *Id.* A

timely appeal was taken from those verdicts. *Id.*

In 1991 the petitioner filed a Motion for New Trial with the Massachusetts Supreme Judicial Court ("the SJC"). *See* Supp. Ans., Exhibit 1. The SJC remanded the motion to the Massachusetts Superior Court for decision. *Id.* After a hearing before Justice Vieri Volterra on March 5-7, 1991, the Motion for New Trial was denied. *Id.* The petitioner appealed the denial of this motion. *Id.*

The SJC, after review of the consolidated appeal (both direct appeal and the appeal of the denial of the motion for a new trial) overturned the Superior Court's denial of the motion for a new trial, and ordered a new trial for the petitioner. *See* Supp. Ans., Exhibit 1; *see also Commonwealth v. Roberio,* 440 Mass. 245, 246, 797 N.E.2d 364 (2003). The reason for the reversal of the petitioner's convictions at the first trial was "ineffective assistance of counsel, based on trial counsel's failure to raise the defense of lack of criminal responsibility due to the defendant's psychological disorders combined with his use of alcohol." *Commonwealth v. Roberio,* 440 Mass. at 245-46.

The petitioner's second trial commenced on January 11, 2000. *See* Supp. Ans., Exhibits 1 & 2. At the conclusion of the second trial, the jury again returned verdicts of guilty on both indictments. *Id.* The petitioner was sentenced to life in prison on his conviction for first degree murder, and received a concurrent life sentence on the conviction for armed robbery. *Id.* at Exhibit 2. The petitioner filed a timely notice of appeal on January 21, 2001. *Id.* at Exhibit 1. The SJC affirmed the defendant's convictions in an opinion dated October 21, 2003. *See Commonwealth v. Roberio*, 440 Mass. 245, 797 N.E.2d 364 (2003).

**STATEMENT OF FACTS**

The SJC's recitation of facts is entitled to a presumption of correctness under 28 U.S.C. §

2254(e)(1). *See Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000); *Avellar v. DuBois*, 30 F.Supp.2d 76, 79 (D.Mass. 1998); *Otsuki v. DuBois*, 994 F.Supp. 48, 51 & n.3 (D.Mass. 1998); *cf. Sumner v. Mata*, 449 U.S. 539, 545-46 (1981)(holding that the presumption of correctness under former habeas statute applied to "factual determinations made by state courts, whether the court be a trial court or appellate court"). This deference extends to inferences drawn by the state court from those factual determinations as well. *See Parke v. Raley*, 506 U.S. 20, 35 (1992); *Flores v. Marshall*, 53 F.Supp.2d 509, 514 (D.Mass. 1999).

**Facts Relating to Murder**

The SJC found that the evidence presented at trial included the following[1]:

> On the evening of July 29, 1986, the defendant and Michael Eagles[2] entered the Middleborough trailer home of the victim, a seventy-nine year old man who lived alone and kept a large amount of cash in his trailer. The following day, his body was discovered, savagely beaten with a blunt force object. Several bones, including his spine were fractured, and he had been strangled with his own pillow case. He was alive at the time these injuries were inflicted. Cash, a shotgun, and miscellaneous personal property had been stolen from his home.
>
> Several weeks before the victim's death, the defendant had asked a friend to "do a break with him . . . to get . . . money" from an old man who had a "lot of money" and "didn't believe in banks." On the evening of the murder, the defendant and Eagles were driven to an area near the victim's trailer. The defendant said that he "was going to break into some man's house," and asked for a return trip ride about one hour later. On the return trip, the defendant was shirtless and wet (it had been raining) and Eagles was seen holding a roll of money. During this ride, Rebecca Jennings, the victim's granddaughter (who was not implicated in the crimes), was picked up and given a ride home. She noticed the shirtless defendant in the car but did not converse with him. Kenneth Jones, a friend of Eagles,

---

[1] The SJC noted that "[b]ecause the key issue at trial was the defendant's mental condition, the facts of the underlying crime may be succinctly stated." *Commonwealth v. Roberio*, 440 Mass. 245, 246 (2003).

[2] The SJC explained in a footnote that "Michael Eagles was convicted of murder in the first degree and armed robbery in a separate trial; his convictions were affirmed."(citations omitted). *Commonwealth v. Roberio*, 440 Mass. at 246 n.2.

> testified regarding Eagles but said he did not see the defendant at all that day. The testimony of the last two witnesses, Jennings and Jones, was admitted as prior recorded testimony.[3]
>
> On the day after the murder, the defendant was observed with a fifty dollar bill and revealed the details of the murder to a friend. He also had the friend drive him back to the area of the trailer, where he retrieved the victim's shotgun and a metal box. The police later found those items. A State police fingerprint expert testified that a fingerprint on a beer stein found in the victim's kitchen was that of the defendant.
>
> At the second trial, a neuropsychologist testifying for the defendant opined that the defendant had an attention deficit hyperactivity disorder, an "oppositional defiant disorder," and a learning disability, and that, when those conditions were exacerbated by alcohol use, the defendant lacked the substantial capacity to conform his conduct to the requirements of the law.[4]

*Commonwealth v. Roberio*, 440 Mass. at 246-47.

**<u>Facts Relating to Unavailability of Witnesses Jennings and Jones</u>**

A. *Kenneth Jones*

> The prosecutor informed the judge at the outset of the [second] trial that Jones was a fugitive from justice in Florida wanted on a probation violation warrant issued in that State, and that the Commonwealth had been unable to locate him. Massachusetts State troopers had contacted his probation officer and a deputy sheriff in Florida and were seeking to locate him, but he had moved from his known address. A State trooper spoke with Jones's girl friend, who did not provide any useful information. His probation officer received no information regarding Jones's location in conversations with his mother and brother. A stake

---

[3] Facts relating to the reasons that Mr. Jones and Ms. Jennings were deemed unavailable are set forth in the next section, below.

[4] In a footnote, the SJC elaborated:

> The expert conceded on cross-examination that the defendant "had the specific intent to commit a robbery," knew what he was doing was wrong, and that he acted with deliberate intentional planning and purpose. Based on the defendant's actions, it did not appear to the expert that the defendant was "severely intoxicated."

*Commonwealth v. Roberio*, 440 Mass. at 247 n.3.

> out of a bar in Florida which an informant indicated to authorities Jones would visit on New Year's Eve (trial began later in January) was unavailing. All information tended to show that Jones was addicted to crack cocaine and living on the street with no permanent address. Defense counsel conceded that the Commonwealth had made a good faith effort to locate Jones. The judge so concluded and allowed the Commonwealth's motion to admit his prior recorded testimony.
>
> The situation changed during trial. On the fourth day of trial, as the Commonwealth was planning to rest its case, the prosecutor informed the judge that he had learned on the previous night that, as a result of a traffic stop in Florida, Jones had just been arrested on the probation violation. The prosecutor further stated if he were to proceed under the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings (interstate act), see G.L. c. 233, §§ 13A-13D, it would take some time to complete the required paperwork procedures.[5] The judge concluded that the witness "remain[ed] unavailable," and admitted his prior testimony from the first trial.
>
> B. *Rebecca Jennings*
>
> [Ms.] Jennings was hospitalized suddenly for kidney stone surgery on the second day of trial. When the Commonwealth was about to rest its case on Friday, January 14, 2000, the prosecutor informed the judge that Jennings's doctor has stated by letter that Jennings would not be released from the hospital until the following Tuesday, January 18 (the day when the evidence was expected to and did close) and would be unable to attend court until January 25. The judge ruled that she was unavailable and admitted her testimony from the first trial.

*Commonwealth v. Roberio*, 440 Mass. at 249-50.

## ARGUMENT

**The Petitioner Is Not Entitled to Habeas Corpus Relief Where the Supreme Judicial**

---

[5] The SJC clarified, in a footnote, :

> The prosecutor represented that the following steps would be required: he would have to certify that Jones was a material witness and the judge would have to certify the paperwork; the paperwork would have to be sent to Florida for Jones to be served; and Jones would have a right to be heard regarding whether he was a material and necessary witness. There is no suggestion that the prosecutor's representations were inaccurate.

*Commonwealth v. Roberio*, 440 Mass. at 249 n.5.

**Court's Adjudication of His Claims Was Not Contrary To, or an Unreasonable Application Of, Clearly Established Supreme Court Law.**

In his petition, the petitioner claims that his right under the Sixth Amendment to confront Kevin Jones and Rebecca Jennings was violated when their prior recorded testimony (from his first trial) was admitted at his second trial, since, he claims, neither witness was shown to be "unavailable," as is required for the exceptions to the Confrontation Clause. The petitioner also claims that Ms. Jennings' testimony was rendered unreliable because the petitioner's trial counsel from his first trial was ineffective, and that the first lawyer's cross-examination of Ms. Jennings was, therefore, "constitutionally insufficient." *See* Petition, ¶ 12A. A review of the state court record and the SJC's decision show, however, that the SJC fully evaluated these claims, and that the SJC's decision was neither contrary to nor an unreasonable application of controlling Supreme Court authority on these issues.

I. **Standard of Review**

Since the instant petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this Court's review is governed by that act. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). *See also* 28 U.S.C. § 2254. AEDPA "places a new constraint on the power of a federal habeas court to grant a state petitioner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Williams v. Matesanz*, 230 F.3d 421, 426 (1st Cir. 2000)(overruled on other grounds by *McCambridge v. Hall*, 303 F.3d 24 (1st Cir. 2002))("a federal [habeas] court operates within a closely circumscribed sphere"). As the Supreme Court recently reiterated, AEDPA requires a "'highly deferential standard for evaluating state-court rulings' . . . which demands that state court decisions be given the benefit of the doubt."

*Woodford v. Visciotti*, 537 U.S. 19, 23 (2002)(*per curiam*), *quoting Lindh*, 521 U.S. at 333, n.7. In relevant part, AEDPA precludes a federal court from granting habeas relief, unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. §2254(d)(1-2); *see also Tyler v. Cain*, 533 U.S. 656, 660 (2001). In addition, under AEDPA, state court determinations of factual issues "shall be presumed to be correct" unless the petitioner rebuts this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Coombs*, 202 F.3d at 18.

A. The "Contrary To" Prong

A state court decision is "contrary to" clearly established Supreme Court precedent in only two circumstances: (a) where "the state court applies a rule that contradicts the governing law set forth in" Supreme Court cases or (b) where "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor,* 529 U.S. at 405-06. Under either scenario, in order to fall within the "contrary to" clause, the state court decision must be "substantially different," diametrically different," "opposite in character or nature," or "mutually opposed" to clearly established Supreme Court law. *Id.*

B. The "Unreasonable Application Of" Prong

A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."

*Williams v. Taylor*, 529 U.S. at 407-09, 413. Merely that the state court reached an incorrect result is not sufficient -- the result also must be unreasonable. *L'Abbe v. DiPaolo*, 311 F.3d 93, 96 (1st Cir. 2002), *citing Williams v. Taylor*, 529 U.S. at 411; *see also McCambridge v. Hall*, 303 F.3d 24, 36-37 (1st Cir. 2002)(en banc)("'some increment of incorrectness beyond error is required' . . . The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court"), *quoting Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000). Where, for instance, the state court reaches a result that is "devoid of record support for its support for its conclusion or is arbitrary," the unreasonable application prong likely will be satisfied." *McCambridge*, 303 F.3d at 37, *citing O'Brien v. DuBois*, 145 F.3d 16, 25 (1st Cir. 1998). *See also Kibbe v. DuBois*, 269 F.3d 26, 35 (1st Cir. 2001), *cert. denied* 535 U.S. 960 (2002); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir.), *cert. denied* 534 U.S. 925 (2001). In order for a federal habeas court to find that the "unreasonableness" prong has been met, the state court's determination of either the law or the facts must be *objectively* unreasonable. *See Williams v. Taylor,* 529 U.S. at 411; *Williams v. Matesanz*, 230 F.3d at 426-27; *Torres v. Prunty*, 223 F.3d 1103, 1108 (9th Cir. 2000).

There is no bright-line rule as to what constitutes an "objectively unreasonable" application of federal law or determination of facts. *Williams v. Taylor*, 529 U.S. at 410 ("[t]he term 'unreasonable' is no doubt difficult to define"). As the Supreme Court has made clear, however, an incorrect state court determination is not necessarily an unreasonable one. *Id.* ("the most important point is that an unreasonable application of federal law is different from an *incorrect* application of federal law")(emphasis in original). It is well-settled that "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly. Rather, that application [or determination] must also be unreasonable." *Id.* at 411.

## II. **The SJC's Decision with Respect to the Admission of Prior Recorded Testimony Was Not Contrary To, or an Unreasonable Application Of, Clearly Established Supreme Court Law.**

The petitioner claims that the state court denied him his Sixth Amendment right to confrontation where the trial judge declared Kenneth Jones and Rebecca Jennings unavailable witnesses and admitted their prior recorded testimony from the petitioner's first trial. Specifically, the petitioner claims that this evidence should not have been admitted because, he alleges, the Commonwealth failed to show that the witnesses were "unavailable." The petitioner further claims that Ms. Jennings' testimony was not reliable due to the ineffective representation of the petitioner's first trial counsel. The petitioner's habeas petition must be dismissed, however, because the SJC has rejected these claims, and the SJC's decision on this matter was neither contrary to nor an unreasonable application of Supreme Court precedent. *See Commonwealth v. Roberio,* 440 Mass. 245, 797 N.E.2d 364 (2003).

While it is true that the rights of confrontation and cross-examination are fundamental requirements for a fair trial, *see Davis v. Alaska,* 415 U.S. 308, 316 (1974); *Pointer v. Texas*, 380 U.S. 400, 405 (1965), the Supreme Court has held that there are many exceptions to this general rule. *See Bourjaily v. United States,* 483 U.S. 171, 182 (1987)("societal interest in factfinding necessarily tempers the sweep of the Confrontation Clause"); *see also Siegfriedt v. Fair,* 982 F.2d 14, 16 (1st Cir. 1992). Specifically, and as is at issue in this case, the Supreme Court has long held that admitting the prior recorded testimony of an unavailable witness does not violate the Confrontation Clause. *Mattox v. United States,* 156 U.S. 237, 244 (1895).

When a declarant is not available for cross-examination at trial, the Confrontation Clause

of the Sixth Amendment sets forth the twin requirements that the witness be "unavailable" and that his testimony must bear adequate "indicia of reliability."[6] *See Ohio v. Roberts*, 448 U.S. 56, 66 (1980), *overruled on other grounds by Crawford v. Washington,* ___ U.S. ___, 124 S.Ct. 1354, 1367-69, 158 L.Ed.2d (2004)**;** *Barber v. Page,* 390 U.S. 719, 723-25 (1968). "[A] witness is not 'unavailable' for purposes of . . . the exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Ohio v. Roberts* , 448 U.S. at 74, *quoting Barber v. Page* 390 U.S. at 724-25. The reliability of the prior recorded testimony is indicated by the opportunity for cross-examination of the witness at the prior proceeding. *Ohio v. Roberts,* 448 U.S. at 73; *Mancusi v. Stubbs*, 408 U.S. 204, 213-15, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); *California v. Green*, 399 U.S. 149, 165, 90 S.Ct. 1930, 1951 n.22, 26 L.Ed.2d 489 (1970).

A. Kenneth Jones

The SJC properly analyzed the issue of the unavailability of both Kenneth Jones and

[6] Although the Supreme Court has recently clarified, in *Crawford v. Washington*, ___ U.S. ___, 124 S.Ct. 1354, 1367-69, 158 L.Ed.2d (2004), that this indicia of reliability can only be obtained through actual confrontation, the *Crawford* case has no bearing on the instant habeas petition. The *Crawford* case was decided after the SJC's decision. The question, on habeas review, is whether a Massachusetts court considering the petitioner's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule of law which the petitioner seeks was required by the Constitution. *Goeke v. Branch*, 514 U.S. 115, 118 (1995)(citations omitted). If the rule which the petitioner seeks was "not *dictated* by precedent existing at the time the defendant's conviction became final," a petitioner may not rely on this rule of law in support of his habeas petition. *See Caspari v. Bohlen,* 510 U.S. 383, 390 (1994), *quoting Teague v. Lane,* 489 U.S. 288, 301 (1989)(plurality opinion)(emphasis in original). Therefore, even if the *Crawford* case applied to the facts of the petitioner's claim, the rule set forth in *Crawford* could not be applied to the instant habeas review, since the rule in *Crawford* was not dictated by existing Supreme Court precedent at the time the petitioner's conviction became final. Moreover, the holding in *Crawford* would not have affected the SJC's decision on this case since it is undisputed that in the instant case the petitioner did, in fact, have the opportunity to confront the witnesses at his first trial. *See Commonwealth v. Roberio*, 440 Mass. at 246, *et seq*.

Rebecca Jennings within the framework set forth by the Supreme Court. *See Commonwealth v. Roberio*, 440 Mass. at 249. The Supreme Court has determined, with respect to the "unavailability" requirement, that while prosecutorial authorities must make a good faith effort to obtain a witness' presence at trial," "[t]he lengths to while the prosecution must go to produce a witness . . . is a question of reasonableness." *Ohio v. Roberts*, 448 U.S. at 74, 100 S.Ct. at 2543, *quoting California v. Green*, 399 U.S. at 189 n.22 (Harlan, J., concurring).

In the instant case, the SJC found, with respect to Kenneth Jones, that:

> Although the defendant claims that the mere inconvenience should not result in a determination of unavailability and that an attempt could have been made to expedite the interstate procedure to obtain Jones's early appearance, it was certainly within the judge's discretion to determine that it was impractical to compel the jury to wait the number of days (if not weeks) needed to produce Jones as a live witness. It is the combination here of the obviously adequate steps taken by the Commonwealth prior to trial to locate Jones, together with the fact that he was not found until midtrial, that resulted in satisfaction of the Commonwealth's burden of establishing unavailability. Given the Commonwealth's pretrial diligence, the prosecutor was not obligated to undertake at midtrial the cumbersome procedures of the interstate act or suffer a mistrial.

*Commonwealth v. Roberio,* 440 Mass. at 249.

As to the question of the reliability of Jones' testimony, the SJC noted that "[t]he defendant makes no argument that the prior testimony of Jones was unreliable and has produced no evidence that Jones had any testimony relevant to the key issue in the case, i.e., the defendant's mental condition at the time of the killing." *Commonwealth v. Roberio,* 440 Mass. at 249, n.6. Since the record clearly shows that Mr. Jones was unavailable and that there was (and is) no argument that Mr. Jones' testimony was unreliable,[7] there was no error in the admission of

---

[7] Even if the petitioner were making the argument that Mr. Jones' testimony was unreliable, this claim must fail for the reasons set forth in section II(B)(2), pertaining to Ms. Jennings, below. As was true of Ms. Jennings, Mr. Jones testified at the petitioner's first trial, at (continued...)

Mr. Jones' prior recorded testimony.

B. Rebecca Jennings

The petitioner appears to claim, as he claimed at the SJC, both that Rebecca Jennings was not "unavailable" for purposes of the Confrontation Clause and that her prior recorded testimony was not reliable. *See Commonwealth v. Roberio,* 440 Mass. at 249.

1. *Ms. Jennings' Unavailability*

As to Ms. Jennings' unavailability, the SJC found:

> Jennings was hospitalized suddenly for kidney stone surgery on the second day of the trial. When the Commonwealth was about to rest its case on Friday, January 14, 2000, the prosecutor informed the judge that Jennings's doctor had stated by letter that Jennings would not be released from the hospital until the following Tuesday, January 18 (the day when the evidence was expected to and did close) and would be unable to attend court until January 25. The judge ruled that she was unavailable and admitted her testimony from the first trial.
>
> The defendant maintains that this was another instance of mere inconvenience, not unavailability. But this was a sudden operation, not a scheduled surgery, and a doctor had indicated that Jennings could not testify until one week after the evidence concluded. Thus, this presented a classic case of unavailability. The judge acted within her discretion in determining that Jennings was unavailable.

*Commonwealth v. Roberio,* 440 Mass. at 249-50. The record shows, then, that the prosecution made a good faith effort to produce Ms. Jennings for trial, but was prevented from presenting her as a witness due to her emergency surgery. *Id.* The prosecution further made a showing that Ms. Jennings' condition would prevent her from testifying until one week after the evidence was due to close. *Id.* In light of these showings, the judge's ruling that Ms. Jennings was unavailable for purposes of the exception to the Confrontation Clause cannot be said to be either contrary to or

---

[7](...continued)
which the petitioner was represented by counsel; as such, the petitioner had the opportunity for full and fair cross-examination, and the requirements of the Sixth Amendment Confrontation Clause are satisfied. *See Commonwealth v. Roberio*, 440 Mass. at 249.

an unreasonable application of established Supreme Court precedent. *See Ohio v. Roberts*, 448 U.S. at 73-74, *McCambridge*, 303 F.3d. at 36-37.

2. *Reliability of Ms. Jennings' Prior Recorded Testimony*

Despite the fact that Ms. Jennings testified at the petitioner's first trial, at which he was represented by counsel, "[t]he defendant argues that Jennings's prior testimony is not "reliable" because there was no opportunity for cross-examination." *Commonwealth v. Roberio,* 440 Mass. at 250. The SJC phrased the issue as follows:

> Although the defendant was represented by counsel who cross-examined Jennings at the first trial, present counsel claims that the cross-examination was ineffective because it did not focus on the defendant's mental state as exacerbated by the use of alcohol. The question presented is whether, when there has been a determination that counsel was ineffective in an earlier trial, the defendant had an adequate opportunity to cross-examine the witness on that occasion, so that admission of the witness's recorded testimony at the second trial is not fundamentally unfair.

*Commonwealth v. Roberio,* 440 Mass. at 250.

In evaluating whether there has been an adequate opportunity for cross-examination, the question is whether the prior proceeding afforded the petitioner the opportunity to test the truth of Ms. Jennings' statements, not whether the cross-examination proceeded in exactly the manner the petitioner would have preferred. *See Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985). A defendant "is not entitled under the confrontation clause to a cross-examination that is 'effective in whatever way, and to whatever extent the defense might wish.'" *Commonwealth v. Siegfriedt* , 402 Mass. at 429, *quoting Delaware v. Fensterer*, 474 U. S. at 20, 106 S.Ct. at 294. "The decisions of [the Supreme] Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that the 'trier of fact [has] a satisfactory basis

for evaluating the truth of the prior statement.'" *Commonwealth v. Bohannon,* 385 Mass. 733, 746, 434 N.E.2d 163 (1982), *quoting Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 220 , 27 L.Ed.2d 213 (1970)(plurality). "Cross-examination, to pass muster under the confrontation clause, does not have to be a perfect cross-examination." *Commonwealth v. Tanso*, 411 Mass. 640, 648, 583 N.E.2d 1247, *cert. denied*, 505 U.S. 1221, 112 S.Ct. 3033, 120 L.Ed.2d 902 (1992).[8] In cases where there was "adequate opportunity to cross-examine" at the first trial and counsel "availed himself of that opportunity, " the prior testimony has sufficient "indicia of reliability." *Mancusi v. Stubbs*, 408 U.S. at 216.

The SJC applied these rules to the petitioner's claim that Ms. Jennings' testimony was not reliable since his first attorney was held to be ineffective at the first trial, and found:

> Jennings' testimony did not relate to the relate to the reason counsel was deemed ineffective; furthermore, counsel had the opportunity to cross-examine her with respect to the testimony she offered. Counsel at the first trial was found to be ineffective for failure to present evidence of the defendant's mental condition and the effect of intoxication on that mental condition. Jennings's testimony had no bearing on that issue. She testified only to the weather and the defendant's physical appearance (shirtless and wet) just after the murder. (Her direct testimony was merely two pages long; her cross-examination was another one-half page.) Her testimony, if believed established only the defendant's presence in the vicinity of the crime near the time of the murder, nothing more. The ineffective assistance concerned the defendant's alleged mental condition; the completely unrelated testimony of Jennings is not affected by that finding. "That some of the conduct of . . .defense counsel in the first trial was deemed ineffective does not . . . taint the entire cross-examination." *Commonwealth v. Childs*, 31 Mass. App. Ct. 64, 70, 575 N.E.2d 65 (1991). Defense counsel had the opportunity to cross-examine Jennings and exercised it. Neither the right to confront witnesses nor the right to cross-examine was impinged here.

*Commonwealth v. Roberio,* 440 Mass. at 252.

---

[8] The analysis of Confrontation Clause requirements under Massachusetts law mirrors that of federal law as established by the Supreme Court because "[t]he confrontation clauses of the Massachusetts Declaration of Rights and of G.L. c. 263, § 5, are equivalent to that of the Sixth Amendment." *Commonwealth v. Childs*, 413 Mass. 252, 260, 596 N.E.2d 351 (1992).

The SJC went on to say:

> The defendant claims that his motive or purpose in cross-examining Jennings at the first trial was not identical to his motive or purpose in cross-examining her at the retrial, because his original counsel did not mount a defense based on the defendant's mental condition. He claims that our law requires that the prior testimony of the now unavailable witness must have been "in a proceeding addressed to substantially the same issues as in the current proceeding, with reasonable opportunity and similar motivation on the prior occasion for cross-examination of the declarant by the party against whom the testimony is bow being offered." [Citations omitted.] However, to decide whether the defendant's motive to cross-examine at the earlier proceedings is similar to his motive to cross-examine at the current trial, "[t]he issue in which the testimony was introduced in the [earlier] proceeding as well as the purpose for which the testimony was offered must be substantially similar to the issue and purpose for which the same testimony is offered at the subsequent . . . trial." [Citations omitted.] Here, the issue on which the testimony was introduced by the Commonwealth at the first trial was the same as the issue for which it was offered by the Commonwealth at the second trial: to prove the defendant's presence in the vicinity of the crime at the relevant time. Concerning the requirement that the prior testimony must have been given in a proceeding addressed to substantially the same issues as the present proceeding, in both trials the issue was the defendant's culpability. When the defendant's theory of defense changes because ineffective assistance has been replaced by acceptable representation, the right of the Commonwealth to present testimony of an unavailable witness on other subject matter cannot logically be affected.

*Commonwealth v. Roberio*, 440 Mass. at 252-53.

In short, the SJC found that the petitioner was not asserting that he had not had the opportunity to confront Ms. Jennings about her earlier testimony; rather he was seeking to inquire of her about a different subject area, in hopes that her testimony on that point might help his defense. The SJC ruled:

> The defendant has not shown that his right to confrontation has been violated. Rather, he seeks an opportunity to question Jennings on a subject on which she did not testify, theorizing that that testimony would be beneficial to the defense.[9]

---

[9] The SJC noted that "[t]he defendant has made no showing by means of affidavit or otherwise, either at trial or on appeal, that Jennings has anything to say on the subject of the

(continued...)

> We reject the defendant's implicit invitation to adopt a per se rule that, if failure to present a certain defense is the basis for reversal of a conviction, cross-examination of each witness must have focused on that subject or that witness's prior recorded testimony is not admissible. This is particularly true concerning a witness whose testimony is as restricted in scope as that of Jennings. There was no abuse of discretion or other error of law in admitting the prior recorded testimony in this case.

*Commonwealth v. Roberio*, 440 Mass. at 253-54.

In light of the foregoing, the SJC's decision that the petitioner's right to confrontation and cross-examination was not violated by the admission of either Mr. Jones' or Ms. Jennings' prior recorded testimony was, at the very least, objectively reasonable. The SJC found that each of the witnesses was "unavailable" within the meaning of the Supreme Court's jurisprudence on the Sixth Amendment and that there was no allegation that Mr. Jones' testimony was unreliable. *See generally, Commonwealth v. Roberio*, 440 Mass. at 249-54. The SJC further found that Ms. Jennings' testimony was reliable despite the fact that the petitioner's first trial counsel had been found to be ineffective since the ineffective assistance did not concern the subject matter of Ms. Jennings' testimony and since the petitioner's first attorney did have the opportunity to cross-examine Ms. Jennings about her testimony at the first trial. The SJC's denial of the petitioner's appeal of his conviction for was not, therefore, either contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. Under AEDPA, the key question is not whether this Court concludes that the Commonwealth had shown that the petitioner's statements were the product of a voluntary waiver of his rights, but rather whether the state court decision is arbitrary and without support in the record, reaching an "increment of

---

[9](...continued)
defendant's mental state as affected by the use of alcohol." *Commonwealth v. Roberio*, 440 Mass. at 253, n.7.

incorrectness beyond error . . . great enough to make the decision unreasonable in the independent and objective judgment of the federal court." *McCambridge*, 303 F.3d at 37. The SJC's decision was not unreasonable or contrary to Supreme Court law, and thus the petition should be dismissed.

**CONCLUSION**

For the foregoing reasons, the respondent requests that this Court deny the petition for a writ of habeas and dismiss the petitioner's complaint in its entirety.

Respectfully submitted,

THOMAS F. REILLY,
ATTORNEY GENERAL

______________________________

Maura D. McLaughlin
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ext. 2857
BBO # 634923

Dated: June 18, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 18th day of June, 2004, served a true and accurate copy of the foregoing pleading on the petitioner, Jefferey Roberio, *pro se*, by depositing a copy in the office repository for collection and delivery by first class mail, postage prepaid, to the petitioner at the following address: Jefferey Roberio, One Administrative Road, Bridgewater, Massachusetts, 02324.