UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 JUN 18  P 12: 50

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | | |
|---|---|---|
| JEFFREY ROBERIO, | ) | |
| Petitioner, | ) | |
| | ) | |
| V. | ) | CIVIL ACTION |
| | ) | No. 03-12624-DPW |
| | ) | |
| TIMOTHY HALL, SUPERINTENDENT, | ) | |
| OLD COLONY CORRECTIONAL CENTER, | ) | |
| Respondent. | ) | |

PETITIONER'S MEMORANDUM IN SUPPORT OF
HIS PETITION FOR A WRIT OF HABEAS CORPUS

The petitioner, Jeffrey Roberio (Petitioner), through
this memorandum, requests this Honorable Court to cause to be
issued a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

I.  EXHAUSTION AND PROCEDURE

The Massachusetts Supreme Judicial Court (SJC) was made
aware of the violations of the United States Constitution's
Sixth Amendment in petitioner's direct appeal.  Commonwealth
v. Roberio, 440 Mass. 245, 797 N.E.2d 364 (2003)(Roberio II).
The Sixth Amendment applies to the states through the Four-
teenth Amendment. Pointer v. Texas, 380 U.S. 400, 403 (1965).

In Roberio II, the SJC gave no indication that the peti-
tioner's rights under the Massachusetts Declaration of Rights
were broader than, or distinct from the Sixth Amendment.  The
SJC has stated the Massachusetts Declaration of Rights (Art.
12) is "equivalent to that of the Sixth Amendment."  See
Commonwealth v. Siegfriedt, 402 Mass. 424, 430, 522 N.E.2d
974-975 (1988).

Here, Roberio II fairly appears to be interwoven with

federal law, and presented to the SJC "[i]n such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question." Scarpa v. DuBois, 38 F.3d 1, 6 (1st Cir. 1994).

Because Roberio II is replete with numerous references to the Sixth Amendment, the interests of comity have been sufficiently satisfied, and fully exhausted. The lunette of the Antiterrorism and Effective Death Penalty Act (AEDPA) has been loosened.  The Sixth Amendment claims presented below require review by this federal habeas court.

### PRIOR PROCEEDINGS

On August 25, 1986, a Plymouth County Massachusetts Grand Jury returned an indictment charging first degree murder, G.L. c. 265, § 1, against the petitioner.  On May 27, 1987, a second Grand Jury returned an indictment for armed robbery, G.L. c. 265, § 17, against the petitioner.

The petitioner's first trial commenced on August 11, 1987, in Brockton, Massachusetts.  At the conclusion of that trial, the jury returned verdicts of guilty on both indictments.

A timely notice of appeal was taken from those verdicts.

In 1991, the petitioner filed a motion for new trial, pursuant to Massachusetts Rules of Criminal Procedure 30(b), directly with the SJC.  That Rule 30(b) motion was sent back to the Plymouth County Superior Court for resolution by the SJC.  A hearing was held in the superior court on March 5,

-3-

1991, and shortly thereafter the motion for new trial was
denied.  The petitioner joined that denial with his direct
appeal.  The SJC consolidated the appeals, and then overturned
petitioner's convictions.  See Commonwealth v. Roberio, 428
Mass. 278, 700 N.E.2d 830 (1998)(Roberio I)(attached as "A").
Petitioner's convictions were reversed and remanded for a new
trial based on ineffective assistance of counsel.  The basis
for that ruling was that trial counsel had failed to investi-
gate and/or present an insanity defense. Id.

Petitioner's second trial commenced on January 10, 2000,
for hearings on preliminary motions. (Tr. 1)[1]  On January 19,
2000, the jury returned verdicts of guilty on both indictments
charged against the petitioner.

A timely notice of appeal was filed.

On October 21, 2003, the SJC affirmed petitioner's con-
victions.  Roberio II (attached as "B").

II.  STATEMENT OF THE FACTS

The petitioner incorporates by reference the facts sum-
marized and succinctly stated in Roberio II by the SJC.  But
pertinent to this petition, the petitioner will set forth
specific disputed facts, characterizations of facts, and
inferences which petitioner contends were determined incor-
rectly by the SJC.  Those factual disputes and errors will be

---

[1]  References to petitioner's second trial, Roberior II, will be desig-
nated as (Tr. vol./pg.).  Further, there are two volumes of trial tran-
script designated two, one volume labled "2", and one volume labled "II".
Petitioner will reference them with their designated volume number(s) --
(Tr. 2/pg) and/or (Tr. II/pg).  There is also no volume designated five.

addressed in rebuttle by clear and convincing evidence by
reference to the trial transcripts as set out in this memoran-
dum.[2]

### "UNREASONABLE" AND "CONTRARY TO"

This unsophisticated pro se litigant will not attempt to
supply this court the "analytical framework" of 28 U.S.C. §
2254. But petitioner does understand the directive and course
set out in O'Brien v. DuBois, 145 F.3d 16 (1st Cir. 1998). As
such, he will adequately articulate his assertion that the
SJC's decision resulted in an opinion that is based on an
"unreasonable application" of Supreme Court precedent. In
addition, petitioner contends the SJC correctly identified the
governing rule, but it applied it "unreasonably". Williams v.
Taylor, 529 U.S. 362 (2000).

### III.  ARGUMENT

#### ISSUES PRESENTED

During petitioner's re-trial three prosecution witnesses
were "unavailable", and as a result their prior trial testi-
mony was introduced at the second trial. Petitioner has argued
that two of those witnesses were not constitutionally unavail-
able. Afortiori, these witnesses were not adequately cross-
examined during petitioner's first trial because the defense
presented at the second trial was different and distinct from
his first trial. Accordingly, petitioner's rights embodied
in the Sixth Amendment's Confrontation Clause were violated.

---

[2]  In Roberio II at 797 N.E.2d at 366-67, the last sentence of the first
paragraph states a misnomer: "James" should be "Jones."

Leo Kargizer was unavailable as he was deceased.  And the petitioner does not claim any constitutional violation in the presentation of his prior testimony, recognizing Mattox v. United States, 156 U.S. 237 (1895).

Kenneth Jones was ruled "unavailable" for petitioner's second trial.  It is petitioner's claim that Jones was not unavailable and his prior trial testimony should not have been presented at petitioner's second trial.

Rebecca Jennings was also ruled "unavailable" for petitioner's second trial.  Her unavailability was grounded more on considerations of convenience to her than actual unavailability.  The introduction of her prior trial testimony poses a significantly different and more complex situation. Jennings was not adequately cross-examined concerning the defense presented at the petitioner's second trial because the defense of insanity was not raised during the first trial due to first trial counsel's ineffectiveness.  Roberio I Consequently, the complete recitation by the prosecutor of Jennings' prior trial testimony, which did not include any cross-examination as to petitioner's mental impairment, denied the petitioner the right to effectively cross-examine Jennings.

### KENNETH JONES WAS AVAILABLE FOR THE SECOND TRIAL

Kenneth Jones (Jones) became available on the third day of petitioner's re-trial.  However, the Commonwealth waited until the fourth day of trial before informing the trial judge. (Tr. IV/136-137).  The day before, the prosecutor had learned

that as the result of a traffic stop in the State of Florida, Jones had been arrested the previous night and was being held in a Florida jail. (Tr. IV/136-137)

"[T]he Confrontation Clause of the Sixth Amendment reaches no farther then to require the prosecution to produce any available witness whose declarations it seeks to use in a criminal trial."  See California v. Green, 399 U.S. 149, 174 (1970) (emphasis in original).

And "[a] witness is not 'unavailable' for purposes of the foregoing exceptions to the confrontation requirement unless the prosecutorial authorities have made a 'good-faith effort' to obtain his presence at trial.  The state made no such effort here, and, so far as the record reveals, the sole reason why [Jones] was not present to testify in person was because the state did not attempt to seek his presence.  The right of confrontation may not be dispensed with so lightly."  Barber v. Page, 390 U.S. 719, 724-725 (1968).

The Commonwealth was derelict in attempting to locate, or secure Jones for trial.  Over one year elapsed between the SJC ordering a new trial and petitioner's second trial.  The perfunctory steps taken by the Commonwealth immediately before trial can hardly qualify as a "good-faith effort".  Moreover, no attempt was made to produce Jones after his arrest.

The procrastination of the Commonwealth in not notifying the trial judge until the day following Jones' arrest is further failure of the "good-faith effort" that is required under

Barber v. Page, supra.  This, coupled with the Commonwealth's
failure to make even a cursory attempt at producing Jones at
the petitioner's second trial, violated the Sixth Amendment's
Confrontation Clause.

Barber v. Page, supra, is clearly established Supreme
Court precedent.  It is distinguished as a case in which the,
"Government knew where the absent witness was" and the Supreme
Court found an absence of a good-faith effort because the
prosecution made no attempt to secure a prisoner located in
a nearby state for Barber's re-trial. Id. at 724-725.

The Commonwealth's lackluster inquiry immediately before
petitioner's re-trial did not sufficiently qualify as enough
of an effort to pass constitutional muster.  Stated another
way, the Commonwealth did not make the "good-faith effort"
articulated in Barber to secure Jones' presence at petitioner's
re-trial.

It should not be difficult to believe, and entirely mind-
boggling to weigh, that the Commonwealth with all its vast
resources would have been so derelict in attempting to secure
Jones' presence at re-trial had it not had his prior favorable
testimony from petitioner's first trial.  Commonwealth v.
Childs, 31 Mass.App.Ct. 64, 575 N.E.2d 65, 68-69 (1991).

Surely, in this day and age with super-fast computers,
fax machines and other assorted electronics assets, some
attempt on the "third" night of trial could accomplish more.
Jones might have been more than willing and cooperative to

waive any procedural paperwork, and been glad to accomodate
a quick and speedy return to Massachusetts.  The Commonwealth
was obligated and required to at least try and undertake a
"good-faith effort" to return Jones for trial, after his
arrest on the third day of petitoiner's re-trial -- recollect-
ing the first day of re-trial lasted only a little less than
one hour. (Tr. 1)  Nothing was done to secure Jones' presence
at trial.  United States v. Mann, 590 F.2d 361, 367 (1st Cir.
1978).

    And, "[t]he possibility of a refusal is not equivalent of
asking and receiving a rebuff."  Barber, supra, at 724.

    Granted, the law does not require the doing of a futile
act.  If no possibility of procuring the witness exists (such
as an intervening death) "good-faith" demands nothing of the
Commonwealth.  But if there is a possibility, albeit remote,
that affirmative measures might have produced the declarant,
the obligation of good-faith may demand that effectuation. Id.

    The blush here is that the Commonwealth recited the fol-
lowing on the fourth day of trial, "[i]f he were to proceed
under the Uniform Act to Secure the Attendance of a witness
from Without a State in Criminal Proceedings (interstate act),
see G.L. c. 233, §§ 13A-13D, it would take some time to com-
plete the required paperwork and procedures." (Tr. IV/136)
The SJC also resonated these facts in its opinion as well as
expounded on them in footnote 5.  See Roberio II. 797 N.E.2d
at 367 and n.5.

But even the procedure suggested by the Commonwealth and referenced by the SJC is contrary to established federal law. A cursory review of 28 U.S.C. § 2241(c)(5), "gives federal courts powers to issue writs of habeas corpus ad testificandum at the request of state prosecutorial authorities." Barber, supra, 724 n.4.

In the case at bar, the Commonwealth made no attempt to avail itself of either of the above methods of procuring Jones for petitioner's re-trial. "[N]o such effort here, and so far as the record reveals, the sole reason why [Jones] was not present to testify in person was because the State did not attempt to seek his presence." Barber, supra, at 725.

The SJC "unreasonably" applied the standard of confrontation, and failed to correctly apply the "good-faith effort" that is required under Supreme Court precedent. "[T]he prosecutor was not obligated to undertake at midtrial the cumbersome procedures of the interstate act or suffer a mistrial." Roberio II, 797 N.E.2d at 368.

"[F]or good or bad, the Sixth Amendment requires Confrontation and we are not at liberty to ignore it. To quote the document ... (for it plainly says all that needs be said):

> In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."

Maryland v. Craig, 497 U.S. 836, 870 (1990).

Both the trial court and the SJC "unreasonably" determined that Jones was "unavailable for trial." Plainly, this

determination by the SJC effectuated an "unreasonable" appli-
cation of clearly established Supreme Court precedent, in
allowing the introduction of Jones' previous trial testimony
which had not been cross-examined as to the petitioner's
demeanor on the night of the homicide in line with the insan-
ity defense presented at re-trial.  See Crawford v. Washington,
___ U.S. ___, 124 S.Ct. 1354 (2004), and its progeny.

      A.    THE SJC EFFECTED AN UNREASONABLE
          APPLICATION OF CLEARLY ESTABLISHED
          FEDERAL LAW IN CONCLUDING JONES'
          TESTIMONY WAS RELIABLE.

The petitioner relies on his argument above that Jones
was available for trial, and his prior testimony should not
have been introduced at petitioner's re-trial.

In this instance, the SJC unreasonably applied its hold-
ing in Commonwealth v. Siegfriedt, supra, 522 N.E.2d at 974-
975, "the proponent of the recorded testimony must demonstrate
that the hearsay is reliable," to overcome the petitioner's
constitutional right to confront his accuser. See Roberio II
797 N.E.2d at 367.  "Reliability depends on whether the testi-
mony was shown to be reliable when given and whether the evi-
dence of that testimony is sufficiently accurate.  As to the
first component, as a matter of constitutional law, the indicia
of reliability are satisfied if the prior testimony was given
under oath, the defendant was represented by counsel, counsel
had opportunity to cross-examine the witness, and the issue
at both judicial proceedings is similar. Id., citing Common-

wealth v. Bohannon, 385 Mass. 733, 742-43, 434 N.E.2d 163, 169-70 (1982)(emphasis added).

Recently, the United States Supreme Court, in Crawford v. Washington, ___ U.S. ___, 124 S.Ct. 1354 (2004), held that the Sixth Amendment's Confrontation Clause does not permit the admission of the prior testimonial statements of a witness who does not appear at trial unless the witness is both unavailable to testify and the defendant had a prior opportunity to cross-examine the witness: contrary to the rationale expressed in Ohio v. Roberts, 448 U.S. 56 (1980). In essence, Crawford does away with the "indicia of reliability" on which Bohannon and Siegfriedt are based.

Further, Crawford does not allow a judicial determination that a witness's ex parte testimony bears particularized guarantees of trustworthiness may not serve as a substitute for the opportunity for cross-examination. Id., 124 S.Ct. at 1373.

Next, the SJC erroneously concluded that "the defendant makes no argument that the prior testimony of Jones was unreliable and has produced no evidence that Jones had any testimony relevant to the key issue in the case, i.e., the defendant's mental condition at the time of the killing." Roberio II, 797 N.E.2d 368 n.6.

Here, petitioner's counsel stated on the record on the first day of re-trial, "the last trial was tipped for ineffective assistance of counsel for failing to investigate and put on an insanity defense, which means every single witness that

was called was not examined with the appropriate defense in
mind ... they fail to meet the second [Barber] requirement."
(Tr. I/18-20)

There is also a factual dispute evident in the record
concerning Jones' testimony and his association with the peti-
tioner on the day of the alleged offense. Jones testified
"he d[idn't] see the petitioner." (Tr. I/20)  But in an audio
tape played for the jury, the petitioner gives Jones as an
alibi. (Tr. I/21)  This considerable conflict was for the jury
to determine "[t]he accuracy of the truth-determinig process."
See Dutton v. Evans, 400 U.S. 74, 89 (1970); Bruton v. United
States, 391 U.S. 123, 135-137 (1968).

Here, the "[i]ntegrity of the fact-finding process"
Berger v. California, 393 U.S. 314, 315 (1969), calls into
question the significant denial of an "[e]ssential and funda-
mental requirement for the kind of fair trial which is this
country's constitutional goal." Pointer v. Texas, 380 U.S. at
405.

Jones was not unavailable for trial. The introduction of
that portion of his prior uncross-examined testimony which
conflicts directly with that of the petitioner violated the
Confrontation Clause.  Accordingly, the SJC unreasonably fail-
ed to apply the applicable constitutional safeguards, and the
correct Supreme Court precedent. "[T]he 'right ... to be con-
fronted with the witnesses against him,' Amed. 6, is most
naturally read as a reference to the right of confrontation

at common law, admitting only those exceptions established at the time of the founding. (citations omitted)." <u>Crawford v. Washington</u>, supra, 124 S.Ct. at 1365.

> B.  REBECCA JENNINGS WAS AVAILABLE FOR
> TRIAL, AND IT WAS UNREASONABLE TO
> ALLOW HER PRIOR RECORDED TESTIMONY
> TO BE READ BY THE COMMONWEALTH AT
> THE PETITIONER'S RE-TRIAL.

During the early morning of the second day of petitioner's re-trial, while still in the preliminary stages of impanelling the jury, the prosecution informed the judge that Rebecca Jennings (Jennings) was suddenly rushed to the hospital for emergency surgery for removal of a kidney stone. (Tr. II/4) Recalling that the first day of petitioner's re-trial lasted less than one hour. (Tr. I)

The Commonwealth then announced its intension to seek to admit Jennings' prior recorded trial testiomny in lieu of her actual in-court appearance. (Tr. II/5) The trial judge indicated that she would defer a decision on the issue of unavailability until such time as the Commonwealth actually sought to introduce Jennings' prior trial testimony. (Tr. II/5) The petitioner's counsel objected, stating that the basis for cross-examination was fundamentally different from the first trial. (Tr. II/6)

At the same time the Commonwealth notified the trial judge of Jones' arrest they also provided information of Jennings' hospitalization and her expected release date from the hospital as January 18, 2000. (Tr. IV/137-38) Also sub-

mitted was a doctor's note indicating that Jennings would not be able to resume activities, including trial testimony, until January 25, 2000. (Tr. IV/138)  Thereafter, over petitioner's objection (Tr. IV/138), Jennings' prior trial testimony was read into the record by the Assistant District Attorney, (Tr. IV/140-143).[3]

The SJC unreasonably determined that "[a] classic case of unavailability existed."  Roberio II, 797 N.E.2d at 368.

> The Sixth Amendment provides that, in all
> criminal prosecutions, the accused shall enjoy
> the right ... to be confronted with the wit-
> nesses against him....  [T]his bedrock pro-
> cedural guarantee applies to both federal and
> state prosecutions.

Crawford v. Washington, supra, 124 S.Ct. at 1359, quoting Pointer v. Texas, 380 U.S. 400, 406 (1965)(internal brackets and quotation marks omitted).

There is no exception to the Confrontation Clause that allows for a key prosecution witness' absence from trial, and permits the introduction of her previous testimony on matters not relevant to the defense at trial to be read by the prose-cutor at re-trial.  "[T]he substance of the constitutional protection is preserved to the prisoner in the advantage he once had of seeing the witness face-to-face, and of subject-ing [her] to the ordeal of cross-examination.  This the law says, he shall under no circumstances be deprived of ..."

---

[3]  It should be emphasized that the prosecutor read the entire prior testimony of Jennings, including cross-examination, without distinction or separation  which, under the circumstances of this case, amounted to no cross-examination at all. (Tr. IV/190-193)

Mattox v. United States, 156 U.S. 237, 244 (1895).

In Supreme Court jurisprudence, it has been said that a witness was only unavailable if, "[t]oo ill ever to be expected to attend trial." West v. Louisiana, 195 U.S. 258, 262 (1902). Here, Jennings was discharged during petitioner's trial, on January 18, 2000.

In Barber v. Page, supra, the Supreme Court held that a state could not, consistent with constitutional requirements, use the transcript in lieu of the witness [herself] unless two conditions were met: (1) the witness was shown to be actually unavailable to testify; and (2) the witness had been adequately confronted and cross-examined at the prior hearing.

Here, the SJC opined that the judge again acted within her discretion in determining that Jennings was "unavailable." Roberio II, 797 N.E.2d at 368. Notwithstanding the SJC decision in Roberio II is replete with references to the judge's discretion, that determination requires an analysis under the Confrontation Clause. At petitioner's re-trial it was the responsibility of the trial judge to ensure a fundamentally fair trial and to give due weight and measure to the constitutional safeguards and protections guaranteed the petitioner. Conversely, the petitioner bore no burden whatsoever to motion or request a continuance, or suspension of the proceedings.

In support of its decision, the SJC relied on Commonwealth v. Childs, 413 Mass. 252, 596 N.E.2d 351, 352-53 (1992). The trial in Childs, supra, was "suspended" to allow the Common-

wealth to search for their missing witnesses. Id. Under the
rules of Massachusetts Criminal Procedure, a trial judge can,
sua sponte, suspend, continue or postpone the trial. Alterna-
tively, petitioner bore no responsibility at all to request a
continuance to allow the Commonwealth to gather its witnesses.
Afortiori, here the trial judge knew prior to impanelment of
the jury that key prosecution witnesses were becoming avail-
able and available witnesses were suddenly becoming ill.

"[I]t is a paradigmatic abuse of discretion for a court
to base its judgment on an erroneous view of the law."  See
Schlup v. Delo, 513 U.S. 298, 333 (1995)(O'Connor, J., con-
curring), citing Cooter Cell v. Hartmarx Corp., 496 U.S. 384,
405 (1990); see also, Smith v. Illinois, 390 U.S. 129, 132-
133 (1960)(reversal on confrontaiton grounds for abuse of
discretion).

Plainly, the SJC unreasonably determined that the trial
judge acted within her discretion.

>    C.   THE SJC UNREASONABLY APPLIED THE
>         FEDERAL CONSTITUTIONAL PRINCIPLES
>         RELIED ON IN COMMONWEALTH V. CHILDS,
>         596 N.E.2d 351 (Mass. 1992), TO
>         DENY THE PETITIONER RELIEF.

The second condition of Barber v. Page, supra, as it
applies to petitioner's case, requires this federal habeas
court to set aside the "unreasonable application" of the con-
stitutional principles relied on by the SJC in Commonwealth
v. Childs, supra, 596 N.E.2d 351. Stated another way, the SJC
erroneously determined that it had "considered [the] precise

issue" at bar in Childs.   See Roberio II, 797 N.E.2d at 368-
369.

In stark contrast, the two cases are totally different
and distinct from one another.   The only similarity between
the two cases is that both defendants had prior trial counsel
from their first trials found ineffective.   However, the rea-
sons for the finding of ineffectiveness are completely differ-
ent in each case.   In Childs, trial counsel was found ineffec-
tive for failing "to keep from the jury evidence of the defen-
dant's stale and pardoned convictions."   Childs, 499 N.E.2d
299 (Mass.App.Ct. 1986).   In the instant case, petitioner's
first trial counsel was found ineffective for failing to pre-
sent evidence of the petitioner's psychological deficits and
disorders exacerbated by the use of alcohol prior to the kill-
ing.   Roberio II, 797 N.E.2d 365-366 and n.1.

In Childs, the eyewitness, DeMattia, was ruled "unavail-
able" after the Commonwealth had made a diligent and "good-
faith effort" to produce his presence at re-trial.   Contrast,
Commonwealth v. Childs, 575 N.E.2d 65 (Mass.App.Ct. 1991).
The trial judge articulated detailed and extensive written
findings regarding prior counsel's "[l]enghthy cross-examina-
tion that attacked DeMattia's sincerity, perceptions ... and
memory."   Childs, 596 N.E.2d at 358.   Those written findings
were reproduced and incorporated into the SJC decision, in the
first three pages, which includes an observation by Justice
Brown of the Massachusetts Appeals Court.   "Prior [defense

counsel] is known to be an experienced counsel representing principally defendants and an examination of the transcripts does not contradict that reputation." Id., 596 N.E.2d at 354.

The petitioner's record below is devoid as to any observations or recollections of prior counsel. Moreover, re-trial counsel alerted the court at the earliest stages of the trial that, "the last trial is tipped for ineffective assistance of counsel for failing to investigate and put on an insanity defense which means every single witness that was called was not examined with the appropriate defense in mind ... they fail to meet the second requirement." (Tr. I/18-20)

In the case at bar, Jennings encountered the petitioner very shortly after the alleged incident. (Tr. 2/6) She traveled inside a vehicle, in close proximity to the petitioner, for some period of time. (Tr. II/131) Her observations and her description of the petitioner's physical condition were her only testimony offered at the first trial. (Tr. IV/190-192) The petitioner has asserted that Jennings' impressions of his demeanor supporting an insanity defense could only be elicited from her by effective in-court cross-examination, See Davis v. Alaska, 415 U.S. 308, 315 (1974)(expose to the jury the facts).

Plainly and unequivocally, Jennings was never asked any questions regarding petitioner's sobriety, demeanor or attitude. Because there was a different defense offered at his first trial, the petitioner never had the opportunity to ask

Jennings the type of questions that would support an insanity
defense.  Even as a lay person, Jennings could have been asked
whether she smelled the odor of alcohol on the petitioner's
breath, and how strongly the odor was, or whether petitioner
was acting strangely or in a manner that suggested he was not
in touch with reality.  Under these circumstances it was
imperative that the petitioner be allowed the opportunity to
cross-examine Jennings.  Moreover, in obtaining her responses
to these types of inquiries, that additional information
would have had a possible impact on the jury's acceptance of
the conclusions reached by Doctor Spiers, petitioner's expert
witness. (Tr. VI/5-98)

    The Supreme Court has previously held, "[c]learly, peti-
tioner's inability to cross-examine [Jennings] at trial may
have had a significant effect on the integrity of the fact-
finding process."  See Berger v. California, 393 U.S. 314,
315 (1969).

    Furthermore, "[t]he jurors were entitled to have the
benefit of the defense theory before them so that they could
make an informed judgment as to the weight to place on [Jen-
nings'] testimony."  Davis v. Alaska, supra, 415 U.S. at 315,
quoting Douglas v. Alabama, 380 U.S. 415, 419 (1965).  The
restrictions placed on petitioner's opportunity to cross-exam-
ine Jennings "effectively,... emasculated the right of cross-
examination itself."  Smith v. Illinois, 390 U.S. 129, 131
(1968).  "[C]onfrontation means more than being allowed to

confront the witness physically." Davis, supra, 415 U.S. at
315.

Additionally, here the petitioner was clearly denied
"[t]he opportunity for an effective cross-examination." See
Delaware v. Fensterer, 474 U.S. 15, 20 (1985). Unlike Childs'
lengthy cross-examination of DeMattia, the petitioner in this
case was not allowed to delve into the "perceptions", or
"memory" of Jennings as to the factors which would support an
insanity defense. Davis, supra, 415 U.S. at 316. A "[m]ajor
reason underlying the constitutional rule is to give a defen-
dant charged with a crime the opportunity to cross-examine
the witnesses against him." Pointer, supra, 380 U.S. at 406-
407. As "[c]ross-examination is a tool used to flesh out the
truth, not an empty procedure." Crawford, supra, 124 S.Ct.
at 1377 (Rehnquist, C.J., and O'Connor, J., concurring in the
judgment). "The right of confrontation and cross-examination
is an essential and fundamental requirement for the kind of
fair trial which is this country's goal." O'Brien v. DuBois,
supra, 145 F.3d at 26, quoting Pointer, supra, 380 U.S. at 405.
And  United States Supreme Court jurisprudence makes it abun-
dantly clear that the Confrontation Clause effectuates this
right by guaranteeing a criminal defendant an "[o]pportunity
to cross-examine witnesses effectively." O'Brien, supra, at
26.

"When contemplating restrictions on cross-examination, a
trial court must strike a constitutionally acceptable balance."

-21-

O'Brien, supra, 145 F.3d at 26, quoting Davis v. Alaska, supra,
at 316; see also, California v. Green, 399 U.S. 149, 158 (1970).
It must not narrow the scope in such a way as to preclude the
petitioner from "[d]elving into the witnesses story to test
the witness' perceptions and memory." Ibid.

In Massachusetts, the governing rule is found in Common-
wealth v. Meech, 380 Mass. 490, 403 N.E.2d 1174 (1980), P.J.
Liacos, et als., Handbook of Massachusetts Evidence, § 8.7.1,
at pg. 489 (7th ed. 1999): stating that: "[p]rior testimony
... is admissible if it was given under oath in a proceeding
where the issues were substantially the same as in the current
proceeding and the party against whom it is offered had an
opportunity and similar motive to cross-examine the witness."

The Massachusetts rule is similar to the Federal Rule of
Evidence 804(b)(1). Trigones v. Bissonette, 296 F.3d 1, 7
(1st Cir. 2002). The federal rule provides that former testi-
mony is not excluded by the hearsay prohibition if the decla-
rant is unavailable as a witness and the party against whom
the testimony is now offered ... had an opportunity and simi-
lar motive to develop the testimony." Fed.R.Evid. 804(b)(1).

Here, there can be no dispute the SJC correctly identi-
fied the governing principle but applied it unreasonably. See
Williams v. Taylor, 529 U.S. 362 (2000). The state court
never validated the prior testimony and its relationship with
petitioner's new defense. United States v. Bartelho, 129 F.3d
663, 670-67 (1st Cir. 1997)(the proponent must satisfy both

requirements of the rule: unavailability and similar motive
and opportunity to develop the challenged testimony).  See also,
United States v. Salerno, 505 U.S. 317, 321 (1992).  Jennings
was not unavailable and petitioner vigorously disputes that he
was allowed the opportunity to develop testimony from Jennings
that was similar in motive to the insanity defense.  United
States v. Lombard, 72 F.3d 170, 181 (1st Cir. 1995)(the party
against whom the prior testimony is offered must have had a
similar, not necessarily an identical, motive to develop the
testimony).

Plainly, "the Framers would not have allowed admission of
testimonial statements of a witness who did not appear at trial
unless [s]he was unavailable to testify, and the [petitioner]
had had a prior opportunity for cross-examination." Crawford,
supra, 124 S.Ct. at 1365.

In the words of the SJC, "the decisions of the Supreme
Court make it clear that the mission of the Confrontation
Clause is to advance a practical concern for the accuracy that
the 'trier of fact' [has] a satisfactory basis for evaluating
the truth of the prior statement. Commonwealth v. Bohannon...."
Roberio II, 797 N.E.2d at 369.

"Admitting [Jennings] statements deemed reliable by a
judge is fundamentally at odds with the right of confronta-
tion.  To be sure, the Clause's ultimate goal is to ensure the
reliability of the evidence, but it is a procedural rather
than a substantive guarantee.  It commands, not that evidence

be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." Crawford, supra, 124 S.Ct. at 1370.

In sum, Jennings must be considered available under the Supreme Court precedent announced in Barber v. Page, supra. It necessarily follows that the petitioner was unconstitutionally denied the right to cross-examine Jennings under the motive for an insanity defense at re-trial. Jennings entire prior trial testimony was read to the jury by the prosecutor. The petitioner was not able to cross-examine Jennings regarding the defense of insanity at re-trial. Lastly, an argument can also be made that the re-trial judge abused her discretion in failing to postpone the trial, or at the very least the reading of Jennings' prior trial testimony, until Jennings was available to appear at re-trial.

It is now luminosly clear, "where testimonial evidence is at issue ... the Sixth Amendmenet demands what the common law required: unavailability and a prior opportunity to cross-examine." Crawford, supra, 124 S.Ct. at 1374 (emphasis added). And, "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Ibid (emphasis added).

### CONCLUSION

The SJC's resolution of petitioner's claims does not pass constitutional muster. The SJC's decision amounts to an unrea-

-24-

sonable determination, as well as contrary to, clearly estab-
lished law as determined by the United States Supreme Court.

Accordingly, this court should cause the writ of habeas
corpus to issue.

Dated: _June 15 2004_                    Respectfully submitted,

                                        _Jeff Robaio_
                                        Jeffrey Roberio, pro se
                                        Petitioner
                                        Old Colony Correctional
                                         Center
                                        One Administration Road
                                        Bridgewater, MA 02324