United States District Court
District of Massachusetts

| | |
|---|---|
| JEFFREY ROBERIO, ) | |
| ) | |
| Petitioner, ) | |
| ) | Civil Action No. |
| v. ) | 03-12624-NMG |
| ) | |
| TIMOTHY HALL, ) | |
| ) | |
| Respondent. ) | |

MEMORANDUM & ORDER

GORTON, J.

In the instant petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, Jeffrey Roberio ("Roberio") alleges that his trial in state court was conducted in violation of the Sixth Amendment. He seeks collateral review of his conviction.

I. Background

On August 25, 1986, a Plymouth County grand jury returned an indictment against Roberio charging him with first degree murder. On May 26, 1987, a second grand jury returned an additional indictment charging armed robbery.

Trial commenced on August 11, 1987 and the Massachusetts Supreme Judicial Court ("the SJC") found that the evidence

presented was as follows.[1] On the evening of July 29, 1986, the defendant and Michael Eagles ("Eagles") entered the trailer home of a 79 year-old man who was known to keep large sums of cash on hand. The following day, the man's body was found severely beaten and the trailer had been robbed of cash, a shotgun and miscellaneous personal property.

The evidence showed that, on the evening of the crimes, defendant and Eagles had procured a ride to the area of the trailer from a friend. The defendant told the occupant of the driver's car that he "was going to break into some man's house" and he asked for a return ride approximately one hour later. On the return trip, Rebecca Jennings ("Jennings") (who happened to be the victim's granddaughter) was picked up by the car Roberio was in and given a ride home. Although Jennings did not converse with Roberio, she testified about his appearance and the weather on that day.

Kenneth Jones ("Jones"), who was a friend of Eagles, also testified but he stated that he did not see Roberio on the day in question. In the days following the murder, Roberio's fingerprints were found in the victim's trailer. Roberio was found guilty on both counts.

On October 26, 1998, the SJC set aside the convictions and

---

[1] The facts recited by the SJC are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1).

ordered a new trial. It held that Roberio had received ineffective assistance of counsel because his attorney failed to investigate or present an insanity defense based upon Roberio's alleged mental disorders and alcohol consumption.

Roberio was retried and his attorney presented an insanity defense. At the outset of trial, the prosecutor informed the Court that Jones was a fugitive from justice in Florida and that the government had been unable to locate him. As part of their efforts to locate Jones, Massachusetts police had contacted Jones's probation officer and his girlfriend. They had also ordered a stake out of a bar in Florida where Jones had been expected to appear but ultimately did not. Jones was declared unavailable and the Judge allowed the government's motion to admit his prior testimony.

On the second day of trial, Jennings was suddenly hospitalized for kidney stone surgery. The prosecutor informed the Court that Jennings would not be able to attend Court until January 25, 2000. The Court ruled that she was unavailable and admitted her prior testimony.

On the fourth day of trial, the prosecutor informed the Court that, on the previous night, he had learned that Jones had been apprehended in Florida following a traffic stop. The prosecutor stated that he could attempt to secure Jones's appearance under the Uniform Act to Secure the Attendance of

Witnesses from Without a State in Criminal Proceedings but that the processing would take time. In particular, before Jones could be produced, the prosecutor and the judge would have had to review and sign several documents and Jones would have had to be afforded a hearing to contest the fact that he was a material witness. The judge concluded that Jones remained unavailable and admitted his prior testimony.

Roberio was again convicted and he appealed, arguing that his Sixth Amendment right of confrontation had been violated by the admission of the prior testimony of Jones and Jennings. On October 21, 2003, the SJC Court affirmed the conviction, holding that the testimony had been properly admitted. The instant petition for a writ of habeas corpus was filed on December 12, 2003 and the petitioner continues to assert the same argument.

## II. Legal Analysis

### A. Legal Standard

Pursuant to 28 U.S.C. § 2254(d)(1), a petition for a writ of habeas corpus must be denied unless the state court proceedings:

> resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

Although the petitioner concedes the applicability of that statute, he makes inconsistent statements with respect to which "clearly established Federal law" be believes should be applied.

On the one hand, petitioner contends that the SJC correctly identified the governing rule, but applied it "unreasonably". The SJC applied the rule of Ohio v. Roberts, 448 U.S. 56 (1980), which provides that, in order to permit the admission of a prior statement of a witness, the confrontation clause requires 1) the unavailability of the witness and 2) that the statement bear sufficient indicia of reliability. See Commonwealth v. Roberio, 797 N.E.2d 364, 367 (Mass. 2003).[2]

On the other hand, petitioner quotes from and cites extensively to Crawford v. Washington, 541 U.S. 36 (2004), a case which was decided after the SJC rendered its decision and which overruled Roberts, in part. Under Crawford, if the evidence at issue is "testimonial" (as it is here) the confrontation clause requires 1) the unavailability of the witness and 2) a prior opportunity for cross-examination. 541 U.S. at 68. Thus, Crawford replaced the substantive requirement present in Roberts (that the testimony be reliable) with a procedural requirement (that it has been subject to cross-examination). See id.

Whatever petitioner's intended position might be, the proper standard for this Court to apply is that of Roberts. At the time the SJC rendered its decision, Roberts was the governing rule. The First Circuit Court of Appeals has yet to consider whether

---

[2]The SJC cited to Massachusetts cases but those cases were premised upon the rule set forth in Roberts and its progeny.

Crawford is to be applied retroactively. See Horton v. Allen, 370 F.3d 75, 83 (1st Cir. 2004)("[w]hile the question of the retroactive effect of Crawford, if any, is an important one, we bypass the question here"). Other circuits have, however, unanimously, and persuasively, held that the rule in Crawford is not retroactive. Murillo v. Frank, 2005 WL 736260 (7th. Cir. 2005); Hiracheta v. Attorney General of State of Cal., 105 Fed.Appx. 937 (9th Cir. 2004); Brown v. Uphoff, 381 F.3d 1219 (10th Cir. 2004). See also Ferguson v. Roper, 400 F.3d 635 (8th Cir. 2005)(stating that Crawford "does not appear to" be retroactive). Thus, the decision of the SJC will be analyzed under Roberts.[3]

### B. Analysis

Because the SJC applied the proper law, the issue is whether there was an "unreasonable application" of that law to the facts of the case. 28 U.S.C. 2254(d); Williams v. Taylor 529 U.S. 362, 411 (2000). Petitioner argues that the SJC applied both prongs of Roberts in an unreasonable manner.

### 1. Unavailability

The first requirement is that the witness be unavailable to testify. To establish unavailability, the government must show

---

[3] The application of Crawford would not change the result in this case in any event because the petitioner had ample opportunity to cross examine both Jones and Jennings during the first trial.

that it has "made a <u>good-faith effort</u> to obtain [the witness's] presence at trial". <u>Roberts</u>, 448 U.S. at 74 (emphasis in original)(citations omitted). Ultimately, "[t]he lengths to which the prosecution must go to produce a witness is a question of reasonableness". <u>Id.</u> (citation and quotation omitted).

Here, the trial court ruled, and the SJC agreed, that Jones and Jennings were unavailable. The earliest time that Jennings could have appeared would have been one week after the scheduled close of evidence. Furthermore, given the procedural hurdles that the government would have had to surmount to procure Jones's presence, his delay would likely have been even longer. Under those circumstances, this Court agrees with the SJC that:

> it was certainly within the judge's discretion to determine that it was impractical to compel the jury to wait the number of days (if not weeks) needed to produce [the witnesses].

Accordingly, it was reasonable for both Jennings and Jones to be declared unavailable.

### 2. Reliability

The second requirement under <u>Roberts</u> is that the statement must bear sufficient "indicia of reliability". 448 U.S. at 68. Petitioner argues that the testimony of Jennings and Jones was unreliable because neither was cross-examined concerning petitioner's alleged insanity. The SJC rejected that argument and this Court concurs.

At the first trial, Jennings's testimony, which consumes

only two and one-half pages of transcript, concerned the physical appearance of Roberio and the weather on the day of the murder. She testified that she did not converse with Roberio. Jones testified that he had not seen Roberio on the day in question. Petitioner does not assert that any of the reported testimony is untrue or unreliable.

Instead, petitioner focuses upon the fact that neither Jennings nor Jones were cross-examined about petitioner's alleged insanity. What petitioner fails to explain, however, is how the absence of testimony concerning that unexplored subject somehow rendered the actual, unchallenged testimony unreliable. The SJC stated the point succinctly:

> [w]hen the defendant's theory of defense changes because ineffective assistance has been replaced by acceptable representation, the right of the Commonwealth to present testimony of an unavailable witness on other subject matter cannot logically be affected.

Roberio, 797 N.E.2d at 253.

Moreover, this Court is particularly unimpressed by the absence of cross-examination concerning petitioner's alleged insanity because there is no evidence that either witness knew anything about it. Jones did not see Roberio on the day in question. Jennings did not see him until after the murder and did not converse with him. A criminal defendant "is not entitled under the confrontation clause to a cross-examination that is effective in whatever way, and to whatever extent, the defense

-8-

might wish". <u>Id.</u> at 251. Rather, the only requirement is that the statement be reliable. <u>Roberts</u>, 448 U.S. 68. Under the facts of this case, it was reasonable for the state courts to find the prior testimony of Jennings and Jones reliable. This petition for a writ of habeas corpus is unsustainable.

### ORDER

In accordance with the foregoing, this petition for a writ of habeas corpus is **DENIED** and this case is **DISMISSED**.

**So ordered.**

_____
Nathaniel M. Gorton
United States District Judge

Dated July 11, 2005